United States Courts
Southern District of Texas
FILED

JUN 27 2022

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

THOMAS E. RHONE

V                         CIVIL ACTION NO. 3:21-cv-00074

CITY OF TEXAS CITY, TEXAS

---

PLAINTIFF'S SUPPLEMENTARY BRIEF
IN RESPONSE TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

---

Mark W. Stevens
TBN 19184300
Fed.No. 1953
P.O. Box 16138
Galveston, Texas 77552
409 765 6306
Fax 409 765 6569
Email: mark@mstevenslaw.com
Counsel for Plaintiff

June 27, 2022

1

## Contents3

Authorities……………………………………………………………..3

    Cases…………………………………………………………..…3

    Rules and Statutes……………………………………………….4

Update: Urban Renewal for Free?..............................................................5

State Inverse Condemnation……………………………………………6

State Due-Course-Of-Law Protection……………………………………8

Federal Due Process……………………………………………………..9

Fifth Amendment Takings Claim (Sec. 1983)……………………………12

Substantial Evidence Review Inapplicable to Legal Questions………..14

Signature………………………………………………………………15

Certificate of Service……………………………………………………15

Exhibit A—May 4, 2022 email to Thomas Rhone.

## Authorities

## Cases

*City of Abilene v. Burk Royalty Co.*, 470 S.W. 2d 643 (Tex. 197)..................7

*City of Austin v. Teague*, 570 S.W.2d 389 (Tex. 1978).........................8

*City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995).....................8

*City of Dallas v. Millwee-Jackson Joint Venture*, 2014 WL 1413559
(Tex. App—Dallas 2014, no pet.)(not published)..................................7

*City of Houston v. Carlson*, 393 S.W.3d 350, 357-61
(Tex.App.--Houston [14th Dist.] 2012, no pet.)...................................6

*City of Houston v. Carlson*, 451 S.W.3d 828 (Tex. 2014)........................6

*Edwards Aquifer Authority v. Day*, 369 S.W.3d 814 (Tex. 2012)..................7

*First English Evangelical Lutheran Church v. County of Los Angeles,*
482 U.S. 304, 321 107 S. Ct. 3141 (1987).......................................13-14

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468 (Tex. 2012)............7

*Kinnison v. City of San Antonio*, 480 Fed. Appx. 271 (5th Cir. 2012)..........10

*Knick v. Township of Scott, Pennsylvania*, No. 17-647,
2019 WL 2552486, 588 U.S.____ (2019)...........................................12

*Matthews v. Eldridge*, 424 U.S. 319 (1976).....................................9

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 822 (Tex. 1996).......................7

*Monell v. Department of Social Services of the City of New York,*
436 U.S. 658 (1978)............................................................12

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1985)...........................12

*Social Security Board v. Nierotko*, 327 U.S. 358 (1945).......................15

*State v. Biggar,* 873 S.W.2d 11 (Tex. 1994)..............................................8

*State v. Hale,* 146 S.W.2d 731 (Tex. 1941).............................................. 7

*Teacher Retirement System of Texas v. Cottrell,* 583 S.W.2d 928
(Tex. App.—Austin, 1979 n.r.e.).........................................................15

## Rules & Statutes

Texas Constitution, art. I, Sec. 17 (as revised 2000)....................................6

Texas Local Government Code Chapter 374...........................................5, n. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

THOMAS E. RHONE

V                                       CIVIL ACTION NO. 3:21-cv-00074

CITY OF TEXAS CITY, TEXAS

PLAINTIFF'S SUPPLEMENTARY BRIEF
IN RESPONSE TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JEFFREY BROWN,
UNITED STATES DISTRICT JUDGE

Update—Urban Renewal for Free?

The actions of the City were simply a scheme to engage in uncompensated urban renewal[1] in the guise of "Code Enforcement." See an email attached as Exhibit A.

The email was forwarded on May 4, 2022 to Rhone by Alecs Young, who has for some time been attempting to purchase the property in question. Mr. Young forwarded an email from Garrett McLeod, Economic Development Director for the Texas City Economic Development Corporation.

---

[1] Urban renewal can be funded by issuing bonds under Texas Local Government Code Chapter 374, but Defendant and other cities have found a cheaper way, as illustrated in this case.

McLeod's email, referring to present counsel Kyle Dickson, reads on revealing part:

> Kyle is correct that the intended future of this structure is a full demolition. The construction of the Carver Park Community Center in 2010 provides the necessary space and programming for residents and visitors alike. The demolition of the building would effectively improve the **overall appearance** of the block, and improve the line of sight for the single family structure on Park Avenue.

Forwarded Email of Garrett C. McLeod, Exhibit A.

The emphasized wording makes it clear that the "full demolition" was intended in significant part for cosmetic reasons, i.e., urban renewal without payment.

This case is just the latest attempt by a City to avoid paying to improve appearances, and relying instead on bogus assertions of "police power" or "code enforcement." See and compare, *City of Houston v. Carlson*, 393 S.W.3d 350, 357-61 (Tex.App.--Houston [14th Dist.] 2012, no pet.); *City of Houston v. Carlson*, 451 S.W.3d 828 (Tex. 2014).

## State Inverse Condemnation

Texas Constitution, Art. I, Sec. 17, is the foundation of inverse condemnation law. As amended in 2009, that provision reads as follows:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage,

6

or destruction is for (1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by (A)the State, a political subdivision of the state, or the public at large, or (B) an entity granted the power of eminent domain law; or (C) the elimination of urban blight on a particular parcel of property.

Section 17 is self enacting for physical taking or regulatory taking claims, such as this. The elements are:

- Result in an actual physical invasion;
- Denies the owner all economically viable use of his property;
- Considered a land use exaction, OR
- Unreasonably interfere with the landowners right to use and enjoy his property.

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477-78 (Tex. 2012); *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814, 838-39 (Tex. 2012); *City of Abilene v. Burk Royalty Co.*, 470 S.W. 2d 643, 647 (Tex. 197)(Listing Elements); *State v. Hale*, 146 S.W.2d 731, 736 (Tex. 1941) (requiring intent).

A taking is the acquisition, damage or destruction of property by a physical taking or regulatory means. See *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 822, 933 (Tex. 1996).

This case is typical of governmental attempts to unfairly gain an advantage at the expense of a private landowner. See, e.g., *City of Dallas v. Millwee-Jackson*

7

*Joint Venture,* 2014 WL 1413559 (Tex. App—Dallas 2014, no pet.)(not published), noting that one type of inverse condemnation is recognized "…where the government acts to gain an unfair advantage 'against an economic interest of an owner.' " Id. At *3, citing *State v. Biggar,* 873 S.W.2d 11, 13 (Tex. 1994) and *City of Austin v. Teague,* 570 S.W.2d 389, 393 (Tex. 1978):

> If government is able to use its power as sovereign to adjust the value of 'just compensation', the constitutional protection is rendered meaningless…In such a world, government 'can no longer pretend to be acting as a neutral arbiter….Instead, it has placed a heavy governmental thumb on the scales to ensure that the forthcoming dispute it and one, or more, of its citizens, the scales will tip in its own favor.

*Millwee-Jackson, supra,* at *3, citing *Biggar,* 873 S.W.2d at 14.

### State Due-Course-Of-Law Protection

The question appears to be what remedy can be awarded by the courts for a due course of law violation. The answer is unclear or at least undecided.

It seems clear that injunctive relief may be awarded, i.e., in some cases the expression is used that the remedy for lack of due process is—due process. That remedy may have been abandoned under the court's previous order in this case, but would be largely moot in this case, where the property has been vacant and deteriorating at the City's insistence for well over a year.

The case of *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex. 1995) is often mistakenly cited for the proposition that there is no right of damages or

8

monetary relief for any violation of the Texas Constitution. That is not the law, however.

*Bouillion* is restricted to its facts, i.e., a claim for monetary relief for violation of the <u>free speech</u> and <u>assembly</u> guarantees under the Texas Constitution. To that extent, the Texas Supreme Court held that monetary relief was not available. However, in the same opinion, the court explained that the guarantee of compensation for takings contained in art. I, Sec. 17 could not be expanded beyond its boundary to other constitutional claims:

> "The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use." However, this language cannot be interpreted beyond its context. The Texas of Section 17 waives immunity only when one seeks adequate compensation for property lost to the State. We are not persuaded that a right to damages for injuries to constitutional interests can be implied from a limited explicit entitlement for compensation for the loss of property.

*Bouillion, supra,* 896 S.W.2d at 149.

## Federal Due Process

What process is "Due"? In *Matthews v. Eldridge*, 424 U.S. 319 (1976) the Supreme Court stated that in each case the court must determine:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and

9

>administrative burdens that the additional or substitute procedures would entail.

*Matthews, supra,* 424 U.S. at 335.

In *Kinnison v. City of San Antonio,* 480 Fed. Appx. 271 (5th Cir. 2012), City inspectors demolished a property under a summary demolition ordinance of the City itself, without any statutory underpinning. The Fifth Circuit reversed on the grounds of inadequate pre-deprivation notice, i.e., the fact that the building had been cited in 2006 and the owner given notice, but in 2008 the same building was targeted for demolition without any predeprivation notice at all.

Here, the City's inspectors targeted Rhone's property and clearly had determined in their own minds that it should be demolished. The "Notice" provided was deficient in several respects:

--The Photographs provided were essentially useless, postage-stamp size snapshots of the exterior of the building, when the gist of the complaints involved allegedly defective interior "defects" which could not be depicted by any photograph.

--The City provided something provided no specific "punch list" of repairs required, but instead simply cited sections of the City Code and invited Rhone to guess at what had to be done to placate the inspectors—while his tenants had been evicted.

10

--in the meetings that followed, the chief city actor made it clear that his mind was made up, referring to a dissenting person present (a former city employee) as a "traitor".

There was never any imminent danger of collapse, fire, etc. The building still stands today, despite the City's best efforts, even to the extent of denying permission to place a tarp on the roof to prevent water damage.

The City's first move was not to the municipal court, but to the 405th District Court, where it succeeded in (1) obtaining a *mandatory* temporary injunction removing the last of Rhone's tenants, and (2) successfully objecting to the intervention of Rhone's bank, which held a $140,000 plus lien on the property –together with assignment of rents-- which was jeopardized by the City's actions. Those holdings are still on appeal in Nos. 14-20-00854-CV, *Rhone v. City of Texas City,* and 14-20-00854-CV, *HomeTown Bank N.A. v. City of Texas City, Texas.* Both cases were submitted without oral argument on January 26, 2022, but no opinion or judgement has issued yet.

The state court actions were a maneuver to create a "vacant" building and thus fabricate justification for the City's later claiming that Rhone had not only to correct existing deficiencies, but to remodel the apartments with trees, shrubs, etc. in conformity with the 2015 City Codes, disregarding the grandfather status of the vintage 1960's building.

It is significant that at this time a prospective buyer for the buildings in question is being required to conform to existing standards, with those standards being dictated by an entity affiliated with the City. See Attachment, and not that it is copied to the City's counsel in the present case.

### Fifth Amendment Takings Claim (Sec. 1983)

At the outset it is important to recall that a "taking" occurs at the moment of that taking, and not following any state procedural requirement such as a hearing or applications to state courts for relief. *Knick v. Township of Scott, Pennsylvania*, No. 17-647, 2019 WL 2552486, 588 U.S.____ (2019).

The City has apparently waived any protection that might have been afforded under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), because the City to date has not attempted to distinguish *Monell* from this case.

*Monell* was sharpened in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1985), where it was established that even a single act by employees could lead to Sec. 1983 liability for a municipality:

> But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell's* language makes it clear that it expressly other officials "whose acts or edicts may fairly be said to represent official policy.

*Pembauer, supra*, 475 U.S. at 480, citing *Monell, supra*, 436 U.S. at 694.

There can be no doubt that City Employees Marilyn Logan and Fire Marshall Harris were the ultimate and only decision makers as to whether a building was "substandard" so as to require demolition. Ms. Logan testified before the municipal court of record:

> Q: Aside from your own determination and perhaps Marshall Harris's—Fire Marshal Harris's determination, was there any other board or group of people at Texas City that has the authority to determine whether a property is substandard or is that entirely in your purview, so to speak?
> A: If an—your question is if any board or group can determine?
> Q: Board, group, panel for public hearings other than hearing in court.
> A: Not that I'm aware of.

RR of February 28, 2021, 87:22-88:7.

Thus, at no time did the City have anything resembling internal review, but instead allowed officials such as Ms. Logan and Fire Marshall Harris to use their "code enforcement" authority to shut down their apartments in question—and clearly did so substantially for purposes of unpaid urban renewal rather than a genuine and objective determination that the apartments were so "substandard" as to require demolition.

*First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 321 107 S. Ct. 3141 (1987) is instructive as to a minimum level of damages, noting that temporary takings (e.g., well over a year's lost rentals to Rhone) are compensable. . As *First English* put it:

13

> It would be a very curious and unsatisfactory result, if it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not taken for the public use.

*First English Lutheran,* 482 U.S. at 316-317.

*First English Lutheran* made it clear that a temporary taking would not result from ordinary delays caused by code enforcement. 482 U.S. at 321. But the delays imposed in this case were far from ordinary, and delay was *deliberate* and purposely fragmented to exhaust the property owner.

As noted, the City first sought to vacate the apartments by a State District Court which Mandatory injunction, which is still under appeal. About one year later, the City brough a municipal action which was aborted in December of 2020 due to inaccurate paperwork. The City then reserved a date for a municipal court action but did not file its complaint—to confer supposed jurisdiction on the municipal court—until just two days before the hearing of February 24, 2021. The municipal court, contrary to its usual and announced policy, refused a continuance and plowed through with the hearing on February 24, 2021.

### Substantial Evidence Review Inapplicable to Legal Questions

In closing, it should be noted that under Texas and Federal law, substantial evidence review at most insulates only fact finding supported by evidence, but does not apply to findings on questions of law. See, e.g., *Teacher Retirement*

*System of Texas v. Cottrell,* 583 S.W.2d 928, 930 (Tex. App.—Austin, 1979 n.r.e.), citing *Social Security Board v. Nierotko,* 327 U.S. 358 (1945). It is one thing to declare that a property needs repairs; it is quite another—and a question of law-- to declare that the property should be razed, especially when the purpose appears to be the cosmetics of urban renewal.

Respectfully Submitted,

*Mark W. Stevens*

Mark W. Stevens
TBN 19184300
Fed.No. 1953
P.O. Box 16138
Galveston, Texas 77552
409 765 6306
Fax 409 765 6569
Email: mark@mstevenslaw.com
Counsel for Plaintiff

## Certificate of Service

I certify that a true and correct copy of the foregoing instrument was served via email PDF to Mr. Kyle Dickson, email kdickson@murray-lobb.com, 2200 Space Park Drive, Suite 350, Houston, Texas 77058, on June 27, 2027.

*Mark W. Stevens*

## Fwd: Purchase of city property

Alecs Young <alecsyoung88@gmail.com>
Tue 3/15/2022 6:50 PM
To: Thomas Rhone <tomme@msn.com>

Alecs Young
507-251-4317

> Mr. Young,
>
> My name is Garrett McLeod, I serve as the Economic Development Director for the Texas City Economic Development Corporation. Kyle is correct that the intended future of this structure is a full demolition. The construction of the Carver Park Community Center in 2010 provides the necessary space and programming for residents and visitors alike. The demolition of the building would effectively improve the overall appearance of the block, and improve the line of sight for the single family structure on Park Ave.
>
> Our standard calculation for corporation property sales is $2.45/sq. ft. Based upon the square footage of the property (6,419) the sale price would equate to $15,726. However the demolition of the structure as Kyle stated would be calculated into the price. This would bring the sale of the property closer to $10,000 along with the responsibility of the demolition. We simply do not see a beneficial use to rehabbing that structure.
>
> Thanks,
>
> Garrett C. McLeod
>
> Economic Development Director
>
> Texas City Economic Development Corporation
>
> 1801 9th Avenue N. Texas City, Texas 77590