UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 1 2 2022

Nathan Ochsner, Clerk of Court

THOMAS E. RHONE

V                                    CIVIL ACTION NO. 3:21-cv-00074

CITY OF TEXAS CITY, TEXAS

---

PLAINTIFF'S MOTION FOR RELIEF FROM
JUDGEMENT PURSUANT TO FRCP 59 AND 62

---

Mark W. Stevens
TBN 19184300
Fed.No. 1953
P.O. Box 16138
Galveston, Texas 77552
409 765 6306
Fax 409 765 6569
Email: mark@mstevenslaw.com
Counsel for Plaintiff

August 12, 2022

1

<u>Contents3</u>

Authorities...................................................................................3

      Cases.....................................................................3

      Rules and Statutes.............................................3

Relief Sought.............................................................................5

I     Remand of State Claims Following Dismissal of Federal Claims.............5

II    Consideration of Absent Third Parties ...........................................8

III   Consider Pending Discussions for Renovation...................................9

IV   Bond...............................................................................12

Signature...............................................................................12

Certificate of Conference...........................................................12

Certificate of Service................................................................12

Certificate of Compliance...........................................................12

Attachments

      Exhibit 1: Copy of *Bettah Beach Productions* Opinion

      Exhibit 2: Email String Ending August 11, 2022

Authorities

Cases

*Betta Beach Productions, Inc. v. Park Board of Trustees
of the City of Galveston,* No. 01-41340, 2003 WL 261812
(5th Cir. 2003)……………………………………………………………....6

*Carnegie-Mellon v. Cohill,* 484 U.S. 33, 350 (1988)…………………….………6-7

*Martin v. State,* 13 S.W.3d 133, 136 (Tex. App.—Dallas 2000, no pet.)………….8

Rules & Statutes

Federal Rule of Civil Procedure 59……………………………………….*passim*

Federal Rule of Civil Procedure 62……………………..……………………*passim*

28 USC Sec. 2410……………………………………………………………..…..4, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

THOMAS E. RHONE

V                                           CIVIL ACTION NO. 3:21-cv-00074

CITY OF TEXAS CITY, TEXAS

---

PLAINTIFF'S MOTION FOR RELIEF FROM
JUDGEMENT PURSUANT TO FRCP 59 AND 62

---

TO THE HONORABLE JEFFREY BROWN,
UNITED STATES DISTRICT JUDGE

Pursuant to Federal Rules of Civil Procedure 59 (New Trial; Aleration or Amendment of Judgment) and 62 (Stay of Proceedings to Enforce Judgment) , Plaintiff Thomas E. Rhone seeks relief from the Judgment entered July 18, 2022. This motion is filed within 28 days of the date of entry of judgment and is therefore timely. FRCP 59(b).

There are very recent indications that the City may proceed with demolition in spite of a planned appeal. If the building is destroyed, it would immediately impair the mortgage on the building held by HomeTown Bank N.A. (c. $200,000 plus balance) and a c. $21,000 plus tax lien held buy the Federal Government, as described below.

4

## Relief Sought

1. Rhone requests the Court consider the interest of unrepresented third parties, i.e., HomeTown Bank, N.A., which holds a substantial mortgage lien on the subject property, The federal government which holds a tax lien on file (28 USC Sec. 2410) and a third party buyer recently in negotiation with the City of Texas City for purchase and rehabilitation of the property.

2. Alternatively and in light of disposal of the federal (Sec. 1983 and Takings/Due Process) claims, Rhone requests the court to consider whether the court should continue to exercise its jurisdiction over pendent or supplementary state claims, or whether those claims should be remanded to the State courts under rules of comity.

I

## Remand to State Courts

The wording of this court's opinions suggest that the court appreciates the sensitivity of questions regarding the jurisdiction of state courts but defers to state statutes as determinative of the question without remanding after disposing of the federal claims herein. . See Memorandum Opinion and Order of May 23, 2022, page 11, first paragraph ("…Texas City's municipal court judge was appointed by local ordinance, in keeping with state statute, to adjudicate his docket in

5

accordance with the city's policies and procedures and his own legal training and experience.").

Appellate case law arising out of this same district court differs and suggests that upon determination of federal claims, the court should have considered remanding state claims. See *Betta Beach Productions, Inc. v. Park Board of Trustees of the City of Galveston,* No. 01-41340, 2003 WL 261812 (5th Cir. 2003) (Unpublished; See copy as first attachment).

In *Betta Beach Productions*, the parties early on disposed of the federal claims by settlement, but the trial court insisted on retaining all state claims under the doctrine of supplemental jurisdiction. The District Court emphasized the press coverage, reputation of a local law firm, and involvement of local government and a popular beach, stating in conclusion that it would be

> "...[I]nappropriate to prevent a full and public airing of the grievances between the parties by granting dispositive relief on hyper-technical [i.e., jurisdictional] grounds."

Exhibit A, p. 5, quoting the District Court. The District Court then proceeded to try the remaining state claims some 15 months after the federal claims had been resolved.

In reversing with instructions to remand, the appeals court noted:

> [T]he district court claimed to be doing so out of a sense of the "intense public interest" of the citizens of Galveston in seeing the case reach a full and fair conclusion. Whether or not public interest Int the case was high, though, is irrelevant for purposes of a district court's exercise of supplemental jurisdiction; a strong public interest does not implicate any of the four *Carnegie-Mellon* factors. Further, the

6

> suggestion implicit in the district court's reasons for retaining
> jurisdiction is that the strong public interest of the citizens of
> Galveston in seeing the case reach a full and fair conclusion could not
> be satisfied in state court....That suggestion must be rejected.

Tab A, pp. 9-10.

The factors laid down in *Carnegie-Mellon v. Cohill,* 484 U.S. 33, 350 (1988)

may be summarized as "judicial economy, convenience, fairness, and comity."

Exh A, p.8.

**Judicial Economy**—This case has not undergone a full blown trial, as was

the situation in *Betta Beach Productions*.  It was promptly disposed of on

Summary Judgment.

**Convenience**—The case was removed from the 122nd District Court in

Galveston. The District Court should in its discretion have done so at the time it

disposed of the federal claims, since it is at that point that the issue of supplemental

jurisdiction must be assessed.  Rhone argues that the court should do so, in its

discretion, now.

**Fairness**—Defendant City of Texas City cannot complain of having to

litigate the merits of state claims in a state court. There are no geographic issues

(e.g., witness availability) which militate against remand.

**Comity,**  however, clearly militates in favor of remand. At issue is the

competence of local governmental bodies to appoint—rather than to elect—

municipal judges who then hold power over property notwithstanding the fact that

7

the municipal judge must within two years look to the City Council for

reappointment.

Cases cited by the City and relied upon by the Court, , e.g., *Martin v. State,*

13 S.W.3d 133, 136 (Tex. App.—Dallas 2000, no pet.)  are inapposite as they do

not deal with the present  situation of ***appointed*** judges hearing cases in which the

appointing City is essentially a party litigant or real party in interest.

Texas Constitution, art. V, Sec. 1, grants the authority to create courts

generally.  But it does NOT grant the authority to create courts manned lawyers on

a short leash in cases which clearly implicate objectives of the appointing city

council.

II

Consideration of Absent Third Parties

The District Court is urged at a minimum to enter an order suspending the

judgment pending appeal, because of the interests of third parties who are not

represented  but who have substantial interests in the property in question—and

which interests will be seriously impaired or destroyed if the judgment is not

stayed pending appeal.

HomeTown Bank N.A. holds a mortgage secured by two of the affected

properties. See Statement of Bank Officer Cesar Hernandez, Plaintiff's Motion for

Summary Judgment, Tab L. The Mortgage is recorded under No. 2014010322,

filed of record on February 27, 2014 in the Galveston County Deed Records). That loan has a present balance in excess of $200,000. If the properties are razed in accordance with the "abatement" order now affirmed by this district court, the Bank's collateral will be seriously impaired and it will at best have the uncertain prospect of a deficiency judgment against Plaintiff Rhone.

Thomas Rhone also federal tax lien on file with the Deed Records of Galveston County, Texas, File No. 2020015902, in the amount of $ 2,131.84, filed on March 19, 2020. Under 28 USC Sec. 2410, the federal government may to be joined when an action affects a federal tax lien and the court is urged to consider the posture of the federal government's apparently junior lien in the event of demolition.

### III

#### Consider Pending Discussions for Renovation

For some weeks now a prospective buyer has approached the City with the objective of purchasing and renovating the subject properties. The prospective buyer is Kurette Properties, LLC, of Pearland, Texas. However, these discussions have ended at least at this time. In response to this counsel's email of August 11, 2022, the City's counsel Kyle Dickson replied as follows by return email quoted *verbatim* with the entire email string attached as Exhibit 2:

Mark,

We oppose the motion and are not willing to extend any deadlines. To date, no "buyer" as home close to providing the City with the required information. The communications to the last purported "buyer" was that "[t]he documents submitted fall well short of meeting minimum code requirements, and would not merit consideration or further discussions. The drawings are lackluster and clearly our Ordinances and Codes were not considered by the designer."

Again, the City opposes your Rule 19 motion and will not entertain any requests for extension of time. Mr. Rhone has been on notice and had full knowledge of the issues and problems with the property since January 2020 yet has done absolutely nothing for 2.5 years.

Kyle

The above response makes no mention of any urgency due to safety and indicates a fixation on cosmetic factors.  Further, Rhone would respond that, as noted in previous proceedings in this court, the City obtained orders from the 405th District Court which vacated the property at the outset, removing all tenants and subsequently barring Rhone from even repairing a roof on one of the buildings from wind damages. See Statement of Roofer Vincent, MSJ Reply Tab G.  If Rhone has "done nothing", it is due to the City's actions in evicting all of the remaining tenants and forbidding Rhone to do ANY work, even to preserve the building against moisture damage.

The "conditions"  were completely unreasonable before and are more so now.  In addition to the indeterminate time for a buyer to obtain replatting or

rezoning, the present state of the economy seriously compromises delivery of construction materials and equipment.

Further and significantly, the apartments in question are in a minority community, i.e., the same that in the present economy is being hard hit by rising rental rates and inadequate housing supply. Deferring the judgment for a reasonable time would be in the public interest but is not, apparently, a concern of the City of Texas City.

IV

Bond

In the event that the court should require any bond, Rhone urges that such bond be set in a nominal amount, e.g., $100, and requests a hearing on that issue. The City has made no showing that the buildings are structurally unsound, e.g., subject to imminent failure or collapse. Harm to Plaintiff Rhone and lien creditors will be immediate and irreparable.

Respectfully Submitted,

*Mark W. Stevens*

Mark W. Stevens
TBN 19184300
Fed.No. 1953
P.O. Box 16138
Galveston, Texas 77552
409 765 6306
Fax 409 765 6569
Email: mark@mstevenslaw.com
Counsel for Plaintiff Thomas E. Rhone

## Certificate of Conference

I certify that I have conferred with The City's Counsel Kyle Dickson on August 11, 2022 via email and that such counsel advises that the City opposes this motion for relief under Rule 19 and further that the City will entertain no more negotiations. The email of this exchange is attached as Exhibit 2.

*Mark W. Stevens*

## Certificate of Service

I certify that a true and correct copy of the foregoing instrument was served via email PDF to Mr. Kyle Dickson, email kdickson@murray-lobb.com, 2200 Space Park Drive, Suite 350, Houston, Texas 77058, on August 12, 2022.

*Mark W. Stevens*

## Certificate of Compliance

The relevant portions of the foregoing instrument contain 1,603 words in

Times New Roman 14 point type, double spaced.

*Mark W. Stevens*

12

EXHIBIT 1

OPINION

BETTA BEACH PRODUCTIONS

V.

GALVESTON PARK BOARDS

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-41340

---

BETTAH BEACH PRODUCTIONS INC; ET AL

Plaintiffs

BETTAH BEACH PRODUCTIONS INC

Plaintiff - Appellee

v.

PARK BOARD OF TRUSTEES OF THE CITY OF GALVESTON; ET AL

Defendants

PARK BOARD OF TRUSTEES OF THE CITY OF GALVESTON

Defendant - Third Party Plaintiff - Appellee

v.

MCLEOD ALEXANDER POWEL & APFFEL

Defendant - Third Party Defendant - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas
(98-CV-619)

---

January 16, 2003

Before KING, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit
Judges.

KING, Chief Judge:[*]

Defendant-Third Party Defendant-Appellant McLeod Alexander
Powel & Apffel ("MAPA") appeals from the final judgment entered
by the District Court for the Southern District of Texas awarding
Defendant-Third Party Plaintiff-Appellee Park Board of Trustees
of the City of Galveston ("Park Board") approximately $2 million
as a result of malpractice committed by MAPA during its
representation of the Park Board.  MAPA also appeals the court's
entry of sanctions against them for Rule 11 violations.  Because
we hold that the district court erroneously retained supplemental
jurisdiction over this case after the federal claims had been
dismissed, we vacate the district court's judgment and remand
with instructions to dismiss the case.  We also affirm the
district court's award of Rule 11 sanctions against MAPA for
filing frivolous post-trial motions.

## I.   FACTS AND PROCEDURAL HISTORY

In 1994, the Park Board solicited proposals for private
management of a section of the waterfront known as East Beach.
Any party seeking management of East Beach would be required to
comply with the regulations promulgated by the Texas General Land
Office ("GLO").  The GLO's interpretation of the Texas Open

---

[*]      Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Beaches Act ("TOBA") requires that any revenues received from
beach user fees be applied solely to beach-related services.

Two local residents, George Childress and Allen Flores, and
their company, Bettah Beach Productions, Inc. ("Bettah Beach"),
showed interest in privately managing East Beach.  Daniel Vaughn,
the attorney for the Park Board and a partner in MAPA, advised
Flores that he should contact the GLO for information about the
permissible uses of parking and concession revenues.  The GLO
replied that whether Bettah Beach could profit from parking
revenues was a matter for the Park Board.  Bettah Beach and the
Park Board ultimately reached a deal; the terms of the Concession
Agreement which Vaughn drafted bound Bettah Beach to comply with
"all applicable laws, rules and regulations regarding beach user
fees."

During the term of the Agreement, questions arose concerning
whether Bettah Beach's use of parking revenues complied with the
TOBA.  Before these questions were resolved, though, a barge
owned by Buffalo Marine Services, Inc. ("Buffalo Marine") spilled
oil onto East Beach in March 1996.  Both Bettah Beach and the
Park Board sought recovery from Buffalo Marine, and both were
represented by MAPA attorneys after initial attempts at
settlement failed.  Whether or not this joint representation was
fully disclosed and approved of is in dispute: MAPA claims that
it explained the joint representation fully to both parties,
while the Park Board claims that it had never been asked for and

3

had never given permission for joint representation with Bettah Beach against Buffalo Marine.   In November 1997, Buffalo Marine, under the terms of a settlement, paid the Park Board $165,000 and Bettah Beach $235,000.

When the time came to renew the Concession Agreement, Bettah Beach assured the Park Board that it had been complying with all "applicable" rules and regulations.   After renewing the Agreement, the Park Board met with the GLO to express its concerns that Bettah Beach was misappropriating beach fees.   The GLO requested quarterly accountings and performed an audit.   The audit revealed questions concerning both whether Bettah Beach properly allocated the proceeds from the Buffalo Marine litigation to beach user fees and whether the Park Board had exercised insufficient supervision over Bettah Beach as its subcontractor.

In December 1998, Bettah Beach sued the Park Board, arguing that the Board never said that Bettah Beach could not profit from its parking revenues.   The Board counterclaimed that Bettah Beach fraudulently misrepresented that it would comply with applicable laws.   The Park Board later filed a third-party complaint against MAPA, alleging that it had breached its fiduciary duty by its joint representation in the Buffalo Marine litigation.

In March 2000, the Park Board and Bettah Beach reached a settlement covering the claims between them.   In May, MAPA moved to have the remainder of the case dismissed on the grounds that

4

federal subject matter jurisdiction no longer existed because all
of the federal claims had been resolved as part of the
settlement.  The district court, in opting to retain supplemental
jurisdiction over the remaining claims, wrote:

> From the beginning, this case has received copious press
> coverage.  Understandably, the citizens of the City of
> Galveston are intensely interested in a suit involving
> elements of their local government, the management of a
> popular local beach, and the professional competence and
> integrity of a prominent local law firm.  Consequently,
> the Court has determined that it would be inappropriate
> to prevent a full and public airing of the grievances
> between the parties by granting dispositive relief on
> hyper-technical grounds.  A trial date has been set for
> January 22, 2001.  All of these matters of legitimate
> public interest will be definitively adjudicated in the
> course of open trial.

In October 2000, the Park Board amended its complaint to
include charges that Vaughn had negligently drafted the
Concession Agreement and that he had failed to monitor Bettah
Beach's use of the beach user revenues to ensure that they
complied with the law.  The case went to trial on August 20,
2001.  On August 23, the jury reached its verdict.  However, MAPA
contends that, while the parties were waiting in the courtroom
for the jury to return and announce the verdict, the two parties
told the court that they had reached a binding settlement.  The
Park Board disagrees, saying that the settlement was not binding
unless it was approved by a vote of the full Board.  The district
court refused to certify the settlement; the jury returned a
verdict of $1.75 million against MAPA, finding that MAPA had both
committed malpractice and breached their fiduciary duty to the

Park Board.  The district court also added, as part of the final
judgment, attorney's fees: a refund of the $52,854.21 paid by the
Park Board to MAPA in the Buffalo Marine litigation, and $160,000
(an amount the parties had stipulated to) in attorney's fees
expended by the Park Board in defending itself in the Bettah
Beach suit.

On August 28, the full Park Board met to discuss the
proposed settlement; the Board unanimously rejected it.
Nevertheless, the next day MAPA filed a Notice of Settlement.
The court rejected the settlement.  MAPA then filed a request for
an evidentiary hearing to discuss the settlement and created a
Statement of Proceedings that sought to reconstruct the pre-
verdict courtroom settlement discussions (which had not been
transcribed for the record).  MAPA also raised the settlement
issue in its motion opposing the entry of the final judgment.  At
a hearing held to discuss the amount of bond MAPA should post
while the judgment was pending on appeal, MAPA mentioned that it
wanted a more complete hearing on the settlement issue; the court
reiterated that it had ruled on the enforceability of the
settlement.  Two weeks later, MAPA again moved that the court
recognize the settlement and tried to get admitted its Statement
of Proceedings.  The court refused and sanctioned MAPA and its

6

counsel in the amount of $2,500 "for the continued filing of
frivolous pleadings."[1]

MAPA raises several issues on appeal: (1) the district court
lacked supplemental jurisdiction over the case; (2) the Board
failed to prove that MAPA's alleged malpractice proximately
caused the damages; (3) the Board failed to prove damages to any
degree of certainty; (4) the statute of limitations barred the
action; (5) the district court made erroneous evidentiary rulings
concerning proffered expert testimony; (6) the district court
judge was openly biased in favor of the Park Board; (7) the award
of attorney's fees was inappropriate; and (8) the refusal to
enforce the settlement agreement and subsequent sanctioning of
MAPA for pressing the point were erroneous.

## II.   SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

The district court denied MAPA's motion to dismiss the
action on the grounds that the court, after the federal claims
had been settled, no longer had supplemental jurisdiction over
the remaining state law claims.  This court reviews a decision to
retain supplemental jurisdiction over state law claims for abuse

---

[1]    MAPA filed a litany of other motions as well (all of
which the Park Board responded to) that did not directly deal
with the settlement.   Ultimately, the court filed an order
denying all future motions, stating that, under "an absolute
blizzard of filings on all sorts of extraneous matters before
this Court," the parties should save their motions for the
pending appeal.

of discretion.  <u>McClelland v. Gronwaldt</u>, 155 F.3d 507, 511 (5th
Cir. 1998).

District courts have the discretion to exercise supplemental
jurisdiction over claims that, while they have no independent
basis for federal jurisdiction, are "so related to claims in the
action within such original jurisdiction that they form part of
the same case or controversy."  28 U.S.C. § 1367(a) (2000).
However, a district court may choose to decline that jurisdiction
in certain circumstances; one of these is when "the district
court has dismissed all claims over which it has original
jurisdiction."  <u>Id.</u> § 1367(c)(3).  In such a case, the "general
rule is to decline to exercise jurisdiction over pendent state-
law claims . . . [though] this rule is neither mandatory nor
absolute."  <u>Batiste v. Island Records, Inc.</u>, 179 F.3d 217, 227
(5th Cir. 1999) (internal quotation and citation omitted).  In
such a case, the district court should consider the factors of
"judicial economy, convenience, fairness, and comity" when
weighing whether to exercise pendent jurisdiction.  <u>Carnegie-
Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988).

The Park Board argues that the sheer volume of pleadings and
motions that had come before the district court sufficiently
implicates the notion of judicial economy to make supplemental
jurisdiction appropriate.  However, at the time MAPA filed its
motion to dismiss, most of the judicial resources had actually
been expended on the underlying case between the Park Board and

Bettah Beach.  When MAPA moved to dismiss for lack of subject
matter jurisdiction on May 9, 2000, the Park Board had yet to
file its final amended complaint in the case and the actual trial
was more than fifteen months away.[2]  <u>See</u> <u>Parker & Parsley</u>
<u>Petroleum Co. v. Dresser Indus.</u>, 972 F.2d 580, 587 (5th Cir.
1992) (dismissing supplemental jurisdiction because, at the point
the motion was made, the parties were "not ready for trial").
The <u>Parker</u> court also noted that the fact that the moving party
had, after the district court opted to retain supplemental
jurisdiction, later filed an amended complaint tended to show
that the litigation was in such an early stage that dismissal
would have been appropriate.  <u>Id.</u>

The district court here made no mention of any of the
factors that it was required by § 1367 and <u>Carnegie Mellon</u> to
consider when deciding whether to retain supplemental
jurisdiction over the pendent state law claims.  Instead, the
district court claimed to be doing so out of a sense of the
"intense public interest" of the citizens of Galveston in seeing
the case reach a full and fair conclusion.  Whether or not public
interest in the case was high, though, is irrelevant for purposes

---

[2]   Of course, by now substantial judicial resources have
been expended on this case, given that it has already gone
through a trial.  However, the decision on whether the exercise
of supplemental jurisdiction was appropriate must be made by
looking at the circumstances at the time the party filed its
motion to dismiss for lack of jurisdiction.  <u>Parker & Parsley</u>
<u>Petroleum Co. v. Dresser Indus.</u>, 972 F.2d 580, 587 (5th Cir.
1992).

of a district court's exercise of supplemental jurisdiction; a
strong public interest does not implicate any of the four
Carnegie-Mellon factors.  Further, the suggestion implicit in the
district court's reason for retaining jurisdiction is that the
strong public interest of the citizens of Galveston in seeing the
case reach a full and fair conclusion could not be satisfied in
state court (presumably also in Galveston).  That suggestion must
be rejected.

In view of the fact that the district court's decision to
exercise supplemental jurisdiction over the case did not address
any of the Carnegie-Mellon factors and relied instead on yet
another factor that was simply wrong, we find that the district
court abused its discretion in retaining supplemental
jurisdiction over this case.  Section 1367(c), as interpreted by
Carnegie-Mellon, embodies specific factors that a district court
must consider in choosing whether to exercise supplemental
jurisdiction over pendent state law claims.  A district court
errs if it fails to consider those factors.

### III. THE POST-TRIAL SANCTIONING OF MAPA

While our holding that the district court abused its
discretion by retaining supplemental jurisdiction over this case
also disposes of the majority of MAPA's remaining claims on
appeal, we must still address MAPA's claim that the district

court erred in sanctioning them $2,500 for their post-trial
actions.

All aspects of Rule 11 sanctions are reviewed for abuse of
discretion.  <u>Merriman v. Sec. Ins. Co. of Hartford</u>, 100 F.3d
1187, 1191 (5th Cir. 1996).  "A district court necessarily abuses
its discretion in imposing sanctions if it bases its ruling on an
erroneous view of the law or a clearly erroneous assessment of
the evidence."  <u>Elliott v. Tilton</u>, 64 F.3d 213, 215 (5th Cir.
1995).  However, a district court's discretion in this area is
generally very broad.  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S.
384, 402 (1990) ("Familiar with the issues and litigants, the
district court is better situated than the court of appeals to
marshal the pertinent facts and apply the fact-dependent legal
standard mandated by Rule 11.").

The district court, in sanctioning MAPA, stated:

> Plaintiff also sought sanctions pursuant to Rule 11 of
> the Federal Rules of Civil Procedure.  The Court, finds
> that, at this time, sanctions are appropriate.  It is,
> therefore, ordered that Defendant and its counsel be
> sanctioned for the continued filing of frivolous
> pleadings, and the Court deems that the appropriate
> sanction for the filing of such Motion and for its
> continuing pattern of conduct in that regard, is
> $2,500.00.

Sanctions may be assessed against a party for filing excessive or
frivolous motions.  <u>Sheets v. Yamaha Motors Corp.</u>, 891 F.2d 533,
538 (5th Cir. 1990).  Thus, the district court's determination
that MAPA's continued filing of post-trial motions was
"frivolous" forms an appropriate basis for sanctions.

11

The district court expressly identified MAPA's "continuing pattern of" filing frivolous post-trial motions as the basis for its decision to impose sanctions. After the full Park Board rejected the pre-verdict settlement, MAPA filed a notice of settlement which the court rejected. Had MAPA stopped there, sanctions would have been inappropriate; in fact, at that time the court denied the Park Board's motion for sanctions, finding that MAPA had pursued the settlement in good faith. However, after the court rejected the settlement MAPA moved for an evidentiary hearing, attempted to file a Statement of Proceedings, and partially reargued the merits of the settlement in its motion opposing the entry of a final judgment. MAPA then brought the issue up again at the bond hearing, where the court expressly stated that it had ruled on the issue. Nevertheless, MAPA again filed notice to settle and to have the Statement of Proceedings made part of the record. Given the repeated attempts to press the same point, even after the court had specifically told MAPA that the settlement issue had been decided, the court did not abuse its discretion in sanctioning MAPA for continuing to beat a dead horse.

## IV. CONCLUSION

We VACATE the district court's judgment and REMAND with instructions to dismiss the case. We AFFIRM the district court's

12

award of sanctions again MAPA for filing frivolous post-trial
motions.   Each party shall bear its own costs.

13

# Exhibit 2

# Kyle Dickson Email String

## Mark Stevens

| | |
|---|---|
| **From:** | Kyle L. Dickson <kdickson@murray-lobb.com> |
| **Sent:** | Thursday, August 11, 2022 11:33 AM |
| **To:** | Mark Stevens |
| **Cc:** | Thomas Rhone; mikewilson27@sbcglobal.net; Kellie Richard |
| **Subject:** | Re: Update on Rhone Investments/Thomas Rhone |

Mark,

We oppose the motion and are not willing to extend any deadlines. To date, no "buyer" has come close to providing the City with the required information. The communication to the last purported "buyer" was that "[t]he documents submitted fall well short of meeting minimum code requirements, and would not merit consideration for extensions or further discussions.  The drawings are lackluster and clearly our Ordinances and Codes were not considered by the designer."

Again, the City opposes your Rule 19 motion and will not entertain any requests for extensions of time. Mr. Rhone has been on notice and had full knowledge of the issues and problems with the property since January 2020 yet has done absolutely nothing for 2.5 years.

Kyle

**From:** Mark Stevens <mark@mstevenslaw.com>
**Date:** Thursday, August 11, 2022 at 11:14 AM
**To:** Kyle Dickson <kdickson@murray-lobb.com>
**Cc:** Thomas Rhone <tomme@msn.com>, "mikewilson27@sbcglobal.net" <mikewilson27@sbcglobal.net>, Kellie Richard <kellie@richardmanagement.com>
**Subject:** FW: Update on Rhone Investments/Thomas Rhone

Counsel,

At the instructions of Mr. Rhone I forward his email of this morning outlining the current state of the dispute between Mr. Rhone and the City of Texas City, Texas

I plan on filing a Rule 19 Motion for Modification of Stay of the judgment today or tomorrow latest. Please advise by email if the City does indeed oppose such a motion and further to confirm that the City is unwilling to agree to any extension to allow recent negotiations to proceed.

Thank you.

Mark W. Stevens

**From:** Thomas Rhone <tomme@msn.com>
**Sent:** Thursday, August 11, 2022 9:51 AM
**To:** Mark Stevens <mark@mstevenslaw.com>; Mike Wilson <mikew27@sbcglobal.net>; Kellie Richard <kellie@richardmanagement.com>
**Subject:** Update on Rhone Investments/Thomas Rhone

Just a quick update on the sale and status of the property.

The buyer for the property is extremely qualified and has over $20,000,000 in commercial property in the area.

Buyer: Kurette Properties, LLC at a purchase price of $1,050,000.

I know this is a very difficult time and really pushing us against a wall with timing.

The Judge needs to be aware of the following items below:

- The City was actively working with the previous buyer after we lost and appealed our case early last year in 2021
- The Fire Marshal, City Planning and Permitting Department and other City Officials were actively involved in remodeling the property.
- I currently have a Federal Tax Lien on the property with many other liens on the property as well.
- We have in our possession an email from Garret McCleod that references Kyle Dickson's name twice in the process to sell the City's building to the new buyer for additional parking.
- I have continuously maintained the property throughout this litigation such as insurance, water, sewer, electricity and lawn service.
- I have paid the property taxes.
- I have maintained my monthly mortgage payments.

Since the property is vacant, I have had some issues with transient people loitering around the property but have a handyman that goes to the property on a daily basis to make sure that no one remains on the property at any given time.

The new buyers have been informed by the Fire Marshal that the property will need to brought up to current code not from Substandard Status but from Condemnation Status and they would have to do it within 90 days. The property will have to be rezoned to commercial status which will take approximately 60 days and not enough time to have the project completed. The new buyer will be willing to purchase the neighboring City property to accommodate for additional parking.

The buyer's and the buyer's agent are still in communication with the City trying to obtain an extension of the time required to get a project of this size completed.

What is the best way on moving forward to save the property and allow it to be sold and remodeled at this time?

Texas law requires all holders to provide the Information About Brokerage Services form to prospective clients.

**Thomas Rhone**
**Coldwell Banker United, Realtors - Bellaire Office**
**(713) 349-9700 Office**
**(281) 788-6404 Cellular**
**(713) 349-9912 Fax**
**Email: ThomasRhone@ColdwellBanker.com**

**Web:** http://www.har.com/thomasrhone

**Buying or selling across town or around the world,**

**I can help you find the right Realtor!**